## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JIMMY BAZILE, #90925**                                        **CIVIL ACTION**

**VERSUS**                                                      **NO.04-0765**

**N. BURL CAIN, WARDEN**                                        **SECTION "C"**
**LA. STATE PENITENTIARY**

## <u>ORDER AND REASONS</u>

Before the Court is Mr. Jimmy Bazile's ("Petitioner") application for writ of habeas

corpus. Having considered the record, Petitioner's memorandum in support of his application,

the state's memorandum in opposition to it, and the applicable law, the Court hereby DENIES

Mr. Bazile's application for writ of habeas corpus.

**I. Background**

Petitioner, Mr. Jimmy Bazile, is currently serving a life sentence at the Louisiana State

Penitentiary in Angola, Louisiana.[1] On November 18, 1998, Mr. Bazile was found guilty of

simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2 and was sentenced on

---

[1] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004. February 18, 2004 is the date Petitioner signed the petition, and the earliest date that Petitioner could have. Thus, the Court will treat June 14, 2005 as the date the petition was filed to determine timeliness, as it represents the earliest date that Petitioner could have presented his petition to prison officials for mailing, and therefore, the earliest date this Court could consider the petition as filed for statute.

December 3, 1998 to serve six years.[2] The state then filed a multiple bill and Mr. Bazile was

found by the trial court to be a fourth offender under La. R.S. 15:529.1 on April 14, 1999 and

was sentenced to life in prison.[3] Mr. Bazile filed a notice of appeal on the same day and filed his

brief with the Louisiana Fourth Circuit Court of Appeal on October 5, 1999.[4] The appeal was

denied on April 26, 2000.[5] Mr. Bazile filed an application for writ of certiorari with the

Louisiana Supreme Court, which was denied on June 22, 2001.[6]

      Petitioner filed a state application for post-conviction relief on September 24, 2001.[7] It

was granted by the criminal district court on March 22, 2002,[8] which later reversed its grant on

October 11, 2002, after the Louisiana Supreme Court decided *State v. Everett*, 00-2998 (La.

2002).[9] Mr. Bazile filed an application for supervisory writs with the Louisiana Fourth Circuit

Court of Appeal on October 31, 2002,[10] which was denied on January 15, 2003.[11] Mr. Bazile

---

[2] State Rec., Vol. 1 of 8, Docket, *State v. Bazile,* No. 396-435; State Rec., Vol. 1 of 8, Bill of Information, *State v. Bazile*, No. 396-435 (Mar. 18, 1998).

[3] State Rec., Vol. 1 of 8, Docket, *State v. Bazile,* No. 396-435; State Rec., Vol. 1 of 8, Transcript of Multiple Bill Hearing, *State v. Bazile*, No. 396-435 (La. Crim. Dist. Ct. Apr. 14, 1999).

[4] State Rec., Vol. 2 of 8, Original Brief of the Appellant, *State v. Bazile*, No. 99-KA-2011.

[5] State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 99-KA-2011.

[6] State Rec., Vol. 1 of 8, Writ Denied, *State v. Bazile*, No. 2000-KO-1709 (La. Jun. 22, 2001). This Court could not find Mr. Bazile's application in the record.

[7] State Rec., Vol. 1 of 8, Uniform Application for Post-Conviction Relief, *Bazile v. Cain*, No. 396-435 (signed Sept. 24, 2001).

[8] State Rec. Vol. 1 of 8, Judgment, *State v. Bazile*, No. 396-435, (La. Crim. Dist. Ct. Mar. 22, 2002).

[9] State Rec. Vol. 1 of 8, Judgment, *State v. Bazile*, No. 396-435, (La. Crim. Dist. Ct. Oct. 11, 2002).

[10] State Rec., Vol. 1 of 8, Application for Supervisor [sic] Writ of Review, *Bazile v. State* (signed Oct. 31, 2002); State Rec., Vol. 1 of 8, Application for Writs of Certiorari Prohibition and

filed an application for supervisory writs with the Louisiana Supreme Court on February 10, 2003,[12] which was denied on November 21, 2003.[13]

Mr. Bazile filed this federal petition on February 18, 2004.[14] In his application, Mr. Bazile raises the following claims: (1) the new rule announced in State v. Everett should not have been applied retroactively to this case because it violates his right to due process; (2) his rights to due process were violated when he was adjudicated a multiple offender based on insufficient evidence; (3) his right to due process was denied when the state trial court sentenced him without knowing that Louisiana law afforded the judge the discretion to command a sentence less than life; (4) he was denied his Sixth Amendment right to effective assistance of counsel at the sentencing proceeding when (a) his trial counsel failed to argue *State v. Shelton* at the multiple bill hearing; (b) his trial counsel failed to inform the trial court that the Louisiana Supreme Court gave him the discretion to depart from the statutory sentence; (c) his trial counsel failed to challenge the State orally filing the multiple bill of information; and (d) his trial counsel failed to object to the State submitting a 1975 conviction.

**II. Timeliness**

---

Review, *Bazile v. State* (signed 11/19/02). It appears as though Mr. Bazile filed two applications to the Louisiana Fourth Circuit Court of Appeals - one through his attorney and one on his own.

[11] State Rec., Vol. 1 of 8, Writ Denied, *State v. Bazile*, No. 2002-KH-2285 (La. Ct. App. 4 Cir. Jan., 15, 2003).

[12] State Rec., Vol. 1 of 8, Letter of Filing, *State v. Bazile*, No. 2003-KP-0435 (La. Feb. 10, 2003).

[13] State Rec., Vol. 1 of 8, Writ Denied, *State v. Bazile*, No. 2003-KP-0435 (La. Nov. 21, 2003).

[14] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, February 18, 2004. February 18, 2004 is the date Petitioner signed the petition.

Petitioner's habeas petition is timely. Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence became final.[15] A petitioner's conviction becomes final for purposes of determining timeliness on the date when the time for filing a petition for certiorari with the United States Supreme Court ends. *Clay v. United States*, 537 U.S. 522, 525 (2003). Petitioner's writ of certiorari was denied by the Louisiana Supreme Court on June 22, 2001. Petitioner had 90 days to file a petition for certiorari with the United States Supreme Court. SUP. CT. R. 13. Because he did not file a petition with the United States Supreme Court, his conviction became final 90 days after June 22, 2001, on September 20, 2001.

On this date, Petitioner's statute of limitations for filing a petition for habeas corpus began to run. However, AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral

---

[15] 28 U.S.C. § 2244(d) provides:

   (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed,  if the applicant was prevented from filing by such State action;
      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

review attacking a conviction or sentence is pending in state court. *See Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2). "'[A] properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998)); *Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000).

Petitioner properly filed an application for post-conviction relief in the Criminal District Court of the Parish of Orleans on September 24, 2001. Between September 20, 2001, when Petitioner's conviction became final for federal habeas purposes, and September 24, 2001, when Petitioner filed for post-conviction relief, 4 days passed.

The statute of limitations remained tolled throughout the pendency of his application for post-conviction, or until November 21, 2003, the date the application was denied by the Louisiana Supreme Court. Starting on November 21, 2003, the limitations period resumed for an additional 89 days until Petitioner filed the instant petition for habeas corpus on February 18, 2004. Together with the 4 days that passed between the date that the conviction became final and the filing of his application for post conviction relief, a total of 93 days of the limitations period elapsed. Thus, Petitioner timely filed his petition prior to the expiration of the one-year statute of limitations period.

Because Petitioner's claims are exhausted and timely, the claims will be considered on the merits.

## III. Standard of Review

The AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law, and mixed questions of law and fact.[16] If the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted the following:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2000), that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, factual findings are presumed to be correct, and a federal court will give deference to the state court's decision unless it "was based on an unreasonable

---

[16] 28 U.S.C. §2254(d):
    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## V. Law and Analysis

### A. Retroactive Application of *State v. Everett*

Mr. Bazile argues that the new rule announced in *State v. Everett* should not have been

applied retroactively to his case.[17] Mr. Bazile was sentenced to life in prison at his multiple bill

hearing on April 14, 1999.[18] Mr. Bazile properly filed an application for post-conviction relief.

After his sentence and while his state application was pending, new case law developed

establishing an affirmative duty on the part of the State to prove a release date indicating that not

more than ten years had passed between a defendant's release from prison on a prior charge and

his next crime. *State v. Chisolm*, 771 So.2d 205, 213-214 (La. App. 4th Cir. 2000. Sept. 27,

2000). If more than ten years passed, according to the new case law, then the conviction could

not be used under the Habitual Offender Law.[19] During Mr. Bazile's multiple offender hearing,

the state failed to prove the release date for one of his convictions, which meant that more than

ten years might have elapsed between his release and his next arrest. If more than ten years had

elapsed, then Mr. Bazile could not have been found a fourth offender under the newly developed

case law. Based on the new case law, the state district court found that there may have been a

Sixth Amendment violation, and ordered a new multiple bill hearing.[20] Two months later, the

---

[17] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 12.

[18] State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing, *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999).

[19] State Rec., Vol. 1 of 8, Judgment, *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Mar. 22, 2002).

[20] *Id.*

Louisiana Supreme Court decided *State v. Everett*, and held that "the only time period relevant to determining whether [a] defendant will be sentenced under the Habitual Offender Law is the time period between the [immediately prior] felony and the [most recent] offense." 816 So.2d 1272, 1279-1280 (La. 2002). Holding that the *Everett* decision meant that there was no longer any prejudice to the defendant, the state court reversed its grant of the application for post-conviction relief.[21]

Mr. Bazile now argues that *State v. Everett* was unconstitutionally applied retroactively to his application. In support, Mr. Bazile relies on *Bradley v. School Board of the City of Richmond*, which held that, on *direct review*, "a court is to apply the law in effect at the time it renders its decision." 416 U.S. 696, 711 (1974) The *Bradley* Court noted that there is "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand and its effect on a final judgment under collateral attack, on the other hand." *Id.* at 710-711. The "effect of a subsequent ruling of invalidity on a prior final judgment under collateral attack is subject to no fixed principle of absolute retroactive invalidity but depends upon consideration of particular relations . . . and particular conduct." *Id.* at 711 n 15 (internal citations omitted). "Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination." *Id* (internal citations omitted). A court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Id* (internal citations omitted).

---

[21]  State Rec. Vol. 1 of 8, Judgment, *State v. Bazile*, No. 396-435, (La. Crim. Dist. Ct. Oct. 11, 2002).

Here, the Court finds no reason to overrule the state court's findings and apply the law as it existed briefly in *Chisolm*. The law under which Mr. Bazile was found a multiple offender did not require the state to prove a release date, and the law under *Everett* does not require the state to prove a release date. Mr. Bazile has offered no persuasive reasons why this Court should not uphold the state court's ruling. Thus, this Court denies Mr. Bazile's claim.

### B: Insufficiency of Evidence At Multiple Offender Hearing

Mr. Bazile next argues that the evidence presented at the multiple offender hearing was insufficient to find him a fourth felony offender.[22] The multiple bill of information was based on a 1994 possession of stolen property conviction (case #366-840), a 1989 simple burglary conviction (case #328-250), and a 1975 simple robbery conviction (case #73-1299 []).[23] As the Fourth Circuit Court of Appeal noted: "At the multiple bill hearing, Officer Glen Burmaster, an expert in fingerprint identification, testified that the fingerprints of the defendant taken in court that day matched those submitted by the State in all three cases. However, he noted in cases #366-840 and #328-250 there were complete sets of fingerprints, and in case #73-1299 [], there was only one fingerprint."[24]

---

[22]  Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 30.

[23]  State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 396-435 (La. Ct. App. 4 Cir. Apr. 26, 2000) p. 3.

[24]   State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 396-435 (La. Ct. App. 4 Cir. Apr. 26, 2000) p. 3;  State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing, *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999).

Mr. Bazile concedes that the State met its burden of proof with respect to the 1994 felony for possession of stolen property.[25] As to the 1989 conviction for simple burglary, Petitioner argues that (1) the fingerprint evidence is on the back of the arrest registers and is not on the back of the bill of information, (2) the guilty plea form was not included in the record, (3) the trial court failed to take notice that a knowing and intelligent guilty plea had taken place, and (4) that the state failed to state to what crime Mr. Bazile had pled guilty to.[26]

In order to prove habitual offender status, the state must present sufficient evidence of the predicate offenses relied upon in the multiple offender bill of information. *Ford v. Cain*, 2004 WL 2998560, *6 (5th Cir. 2004); *State v. Chaney*, 423 So.2d 1092, 1103 (La. 1982), *reh'g denied* (La. 1983). The state is also required to provide evidence that the defendant is the same person convicted of the prior felonies. *State v. Hawthorne*, 580 So.2d 1131, 1133 (La. App. 4 Cir.1991).

Louisiana law does not specify a particular method the state must use to prove that the defendant on trial is the same person convicted of the previous offense. The state may make such a showing in a variety of ways, including "by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race, and date of birth." *State v. Henry*, 709 So.2d 322, 325 (La. App. 4th Cir. 1998); *State v. Neville*, 695 So.2d 534 (La. App. 4th Cir. 1997), *writ denied*, 704 So.2d 1180 (La. 1997) (find the comparison of biographical information from arrest registers to petitioner's

---

[25] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, February 18, 2004, p. 30.

[26] *Id.* at 30-31.

-10-

biographical information sufficient to establish identity). Of particular relevance to this case, the Court has found that the comparison of fingerprints from prior arrests to later offenses is valid for the purposes of sentencing. *Baker v. Cain*, 2005 WL 578783, *4 (E.D. La. 2005) (quoting *State v. Baker*, 776 So.2d 1212, 1217 (La. App. 5 Cir. 2000)); *State v. Richmond*, 734 So.2d 33, 37 (La.App. 5 Cir.1999); *State v. Bell*, 709 So.2d 921, 926 (La. App. 5 Cir. 1998). The state's latitude is not without limit. Merely establishing that the defendant bears the same name as the person previously convicted is not considered sufficient evidence of identity. *State v. Curtis*, 338 So.2d 662 (La.1976).

At the multiple bill hearing on April 14, 1999, "Officer Burmaster, an expert in identification of fingerprints, examined the evidence submitted by the State. He found that the fingerprints on the arrest register taken when the defendant was convicted in 1989 matched the fingerprints of the defendant taken in court that day."[27] The state was not able to match fingerprints to the bill of information because there were no fingerprints on the bill of information. Nevertheless, the State also introduced the bill of information, the guilty plea form, the docket master, the minute entry, and an arrest register to establish that Mr. Bazile was the person convicted of the previous crimes.[28] The identifying information – his name, the arrest dates, item numbers and arrest numbers – on the documents matched.[29]

Based on the evidence presented at the multiple bill hearing and the Louisiana courts previous acceptance of such evidence, the record supports the state court's finding. This Court,

---

[27] State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 396-435 (La. Ct. App. 4 Cir. Apr. 26, 2000) p. 4.

[28] State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing, *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999) p. 5.

[29] *Id.* at 5-6.

therefore, also rejects Petitioner's argument that the evidence was not sufficient to establish he was the same person convicted of the previous offense.

This Court also finds that Mr. Bazile's arguments that the guilty plea was not included in the record and that the trial court failed to take notice that a knowing and intelligent guilty plea had taken place are meritless. When guilty pleas are used to establish prior convictions, the state must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to pleading guilty. *Boykin v. Alabama*, 395 U.S. 238  (1969); *State v. Richardson*, 896 So.2d 257, 266-67(La .App. 2 Cir.2005). This Court has reviewed the guilty plea and waiver of rights form included in the state record provided to this Court and found it sufficient to establish that the guilty plea was knowingly and voluntarily made.[30]

Next Mr. Bazile argues that the state failed to note for the record the crime to which he pled guilty in the 1989 conviction. However, the multiple bill indicates that the crime was simple burglary.[31] Further, the arrest register attests to the type of crime, the arrestee, and the time and place it occurred.[32]

As to the 1975 conviction, Mr. Bazile argues that only the arrest register, and not the bill of information, included fingerprints.[33] At the multiple bill hearing, Officer Burmaster testified that "only one fingerprint was taken in 1975, and it matched the corresponding fingerprint taken in court that day. A bill of information packet from Jefferson Parish was introduced, and Officer

---

[30] State Rec., Vol. 4 of 8, Waiver of Constitutional Rights; Plea of Guilty, *State v. Bazile*, No. 328-250 (Crim. Dist. Ct. Mar. 3, 1989).

[31] State Rec., Vol. 4 of 8, Multiple Bill of Information, *State v. Bazile*, Oct. 7, 1998.

[32] State Rec., Vol. 4 of 8, Arrest Register, *State v. Bazile*, Jun. 14, 1988.

[33] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, February 18, 2004, p. 31.

Burmaster noted that the defendant's name and birth date from the Jefferson Parish conviction matched that information on the other documents introduced."[34] For the same reasons this Court finds that the record supports the state court's finding that Petitioner was the same offender who pled guilty to the 1989 conviction, this Court also finds that, based on the evidence presented at the multiple bill hearing and the Louisiana courts previous acceptance of such evidence, the record fairly supports the state court's finding that Petitioner was guilty of the 1975 conviction.

This Court, therefore, rejects Petitioner's argument that there was insufficient evidence to find him a multiple offender.

### C: Discretion in Sentencing

Mr. Bazile's next argument is that his right to due process was denied when the state trial court sentenced him to life without being aware of its discretion to deviate from the mandatory life sentence required under the Louisiana Habitual Offender Statute, La. R.S. 15:529.1.[35] To support his claim, Petitioner points to language in the sentencing hearing wherein the trial judge stated: "I am not really sure that imposing a life sentence on somebody like you does anything except keep a lot of folks falsely pleased with themselves. I do not have a choice under the law. Its mandated that I have to impose a life sentence on you at this time without benefit of probation, parole or suspension of sentence."[36]

---

[34] State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 396-435 (La. Ct. App. 4 Cir. Apr. 26, 2000) p. 5;  State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing, *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999) pp. 6-8.

[35] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 33.

[36] State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing,  *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999) p. 13.

Petitioner contends that the trial court's ignorance of its ability to deviate from the mandatory life sentence prevented the court from considered certain factors that should have led the court to pronounce a more lenient sentence. This Court finds that the language Petitioner identifies is inadequate to support his claim that the trial court was unaware of its sentencing discretion.

Petitioner's claim is made pursuant to *Hicks v. Oklahoma,* 447 U.S. 343 (1980). *Hicks* and its progeny established that the imposition of sentence by a judge or jury unaware of discretionary sentencing alternatives violates due process. *Hicks*, 477 U.S. 343; *Anderson v. Jones*, 743 F.2d 306 (5th Cir 1984). To assert a valid *Hicks* claim, Petitioner must show first, that the sentencing authority lacked knowledge and understanding of the range of sentencing discretion under state law and second, that there was a "substantial possibility that prejudice was thereby caused." *Dupuy v. Butler*, 837 F.2d 699, 703 (5th Cir. 1988). A defendant who raises "a genuine issue as to the sentencing judge's knowledge and understanding of the range of sentencing discretion is entitled to a hearing before a judge other than the sentencing judge." *Anderson*, 743 F.2d at 308.

Petitioner has failed to demonstrate that the trial judge lacked knowledge and understanding of his sentencing discretion. When sentencing Mr. Bazile, the trial judge stated: "Mr. Bazile, regrettably I am doing this two days in a row and it is not something I necessarily want to do. I got your letter and I probably agree with more in your letter than you realize. This has been a very painful experience for me the whole week. I am not really sure that imposing a life sentence on somebody like you does anything except keep a lot of folks falsely pleased with themselves. I do not have a choice under the law. Its mandated that I have to impose a life

sentence on you at this time without benefit of probation, parole or suspension of  sentence."[37]

The Court finds that the language Petitioner cited reveals nothing more than the trial judge's

appropriate recognition of the restrictive constraints on his authority to deviate from the

mandatory minimum sentence of the Habitual Offender Statute. The language reflects that, in the

words of Louisiana's Fourth Circuit Court of Appeals, that the trial judge had to sentence him to

a life sentence, in light of the defendant's record and the "fact that he could not offer any

mitigating factors for a lesser sentence."[38]

    Even if the trial judge was not aware of his sentencing discretion, Petitioner has also

failed to demonstrate the substantial possibility that he suffered any prejudice in his sentencing.

Petitioner raised a claim of excessive sentence on appeal, which was denied by the Louisiana

Fourth Circuit Court of Appeal.[39] The court noted that Mr. Bazile's record includes "violent

crimes, and there was no testimony to distinguish him or to suggest that his case is the rare

exception in which the trial judge should depart downward from the minimum sentence."[40] A

federal habeas court will not upset a state sentence within the statutory limits unless the sentence

is so disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v.*

*Henderson*, 517 F.2d 135, 136 (5th Cir. 1975). Petitioner's life sentence was pre-determined

under the habitual offender law and thus within the statutory limit. Life sentences under the

habitual offender law, moreover, are presumed to be constitutional. *See State v. Johnson*, 709

---

[37] State Rec., Vol. 8 of 8, Transcript of Multiple Bill Hearing,  *State v. Bazile*, No. 396-435 (Crim. Dist. Ct. Apr. 14, 1999) p. 13.

[38] State Rec., Vol. 2 of 8, Conviction and Sentence Affirmed, *State v. Bazile*, No. 396-435 (La. Ct. App. 4 Cir. Apr. 26, 2000) p. 8.

[39] *Id.* at 6-9.

[40] *Id*. at 9.

So.2d 672, 676 (La. 1998). A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality.

The burden is on the defendant to rebut the presumption of constitutionality by showing that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. *Id.* at 676. Petitioner fails to show that his situation is exceptional, nor has he demonstrated that the mandatory life sentence is arbitrary or shocking. Thus, Petitioner has not demonstrated a substantial possibility that prejudice was caused to him.

Accordingly, the Court denies Petitioner's claim that the trial judge was unaware of his sentencing discretion.

**D: Ineffective Assistance of Counsel**

Mr. Bazile's argues that he was denied effective assistance of counsel when his trial counsel (a) failed to argue *State v. Shelton* at the multiple bill hearing; (b) failed to inform the court that the Louisiana Supreme Court gave him the discretion to depart from the statutory sentence; (c) failed to challenge the state orally filing the multiple bill of information; and (d) failed to object to the state submitting a 1975 conviction.[41]

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  *See Strickland*, 466 U.S. at 697.

---

[41] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, pp. 36-37.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*,

227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969, 123 S.Ct. 1768 (2003). Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### (A) Failure to Argue *State v. Shelton* at the Multiple Bill Hearing

Mr. Bazile argues that his trial counsel was ineffective because he failed to argue *State v. Shelton* at the multiple bill hearing when the state failed to prove that he was a fourth felony offender through convictions.  *State v. Shelton* held that because the defense objected to the evidence the State introduced to prove the prior conviction, the burden of proof was on the state to demonstrate an affirmative showing in the record that the accused at the time he entered his guilty plea knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers. 621 So.2d 769, 777 (La. 1993). The Louisiana Fourth Circuit Court of Appeal held that:

> "In the instant case, after sentencing [at the multiple bill hearing], defense counsel began to make an objection and then withdrew the comment, saying, "I have no legal basis for the argument." The defendant maintains that counsel should have made a specific objection to the insufficiency of evidence based on *Shelton* so that the State would have been required to produce certified convictions. However, the fingerprint expert established the defendant's identity as the perpetrator of the three prior offenses, and the State produced packets from each conviction with proof of the defendant's arrest and conviction. The defendant does not suggest what other specific objections counsel should have made, and he does not deny any of the convictions. Thus, he does not prove that counsel made any errors."

This Court agrees. Mr. Bazile is unable to demonstrate that his counsel's conduct was objectively unreasonable, and even if it was, that Mr. Bazile was prejudiced by his counsel's failure to object to the sufficiency of the evidence used to prove him a multiple offender. The evidence presented by the state was sufficient to establish that Mr. Bazile was a fourth offender and that Mr. Bazile had voluntarily and knowingly pled guilty. Therefore, his counsel's conduct, in not making an objection to the sufficiency of the evidence, was not unreasonable. Even if it was unreasonable, Mr. Bazile has not shown that he has been prejudiced in any way by his counsel's failure to make the objection. Accordingly, the Court rejects this argument.

### (B) Failure to Inform the Court as to Sentencing Discretion

Mr. Bazile next argues that his counsel was in error when he failed to inform the court that the Louisiana Supreme Court gave him the discretion to depart from the statutory sentence if he felt Mr. Bazile's circumstances were not deserving of a life sentence.[42] For the same reasons this Court finds that Petitioner's argument that the trial judge was unaware of his sentencing discretion is without merit, this Court also finds that, even if Mr. Bazile's attorney's actions fell below an objective standard of reasonableness when he failed to inform the state court that he had the discretion to depart from the statutory sentence, Mr. Bazile has not shown prejudice. Even if Mr. Bazile's attorney had informed the state judge of his sentencing discretion, he has not demonstrated a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Therefore, the Court finds this argument meritless.

### (C) Failure to Challenge the State Orally Filing the Multiple Bill of Information

---

[42] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 37.

Mr. Bazile argues that his counsel was ineffective when he failed to challenge the state orally filing the multiple bill of information.[43] The record indicates that the state filed a paper copy of the multiple bill of information.[44] Accordingly, this Court finds Petitioner's argument that his defense counsel was ineffective for failing to challenge the state when it orally filed a multiple bill of information to be meritless.

**(D) Failure to Object to the State's use of a 1975 Conviction**

Mr. Bazile argues that his attorney was ineffective for failing to object to the state submitting a 1975 conviction for use as a predicate offense in the multiple offender hearing.[45] For the same reasons this Court finds that there was sufficient evidence to prove Mr. Bazile a fourth offender and that the application of *State v. Everett* was appropriate, the Court finds that, even if Mr. Bazile's attorney's actions fell below an objective standard of reasonableness when he failed to object to the state submitting the 1975 conviction, Mr. Bazile has not demonstrated prejudice. The admission of the 1975 conviction was proper because under law as it existed at the time, and under *State v. Everett*, the state did not need to establish a release date for Mr. Bazile's 1975 conviction. Further, as discussed above, the evidence admitted was sufficient to establish that Mr. Bazile was a fourth offender. Thus, this Court denies this claim.

**VI. Conclusion**

The Court finds that Mr. Bazile has not established that his state conviction and sentence provide grounds for the relief requested. Accordingly, IT IS ORDERED that the petition of

---

[43] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 37.

[44] State Rec., Vol. 4 of 8, Multiple Bill of Information, *State v. Bazile*, Oct. 7, 1998.

[45] Fed. Rec., Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Bazile v. Cain*, No. 04-0765, Feb. 18, 2004, p. 37.

JIMMY BAZILE for writ of habeas corpus under 28 U.S.C. § 2254 is DISMISSED WITH

PREJUDICE. Judgment will be entered accordingly.

New Orleans, Louisiana this 3rd day of January, 2006.

HELEN G. BERRIGAN
U.S. DISTRICT JUDGE